IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| FLAUBERT MBONGO, et al., *pro se* | * |
| Plaintiffs, | * |
| v. | * Civil No. PJM 12-872 |
| JP MORGAN CHASE BANK, N.A., et al. | * |
| Defendants. | * |

## MEMORANDUM OPINION

Flaubert Mbongo and Charlotte Dikongue ("Plaintiffs"), *pro se*, have sued JP Morgan Chase Bank, N.A. and Wells Fargo Bank, N.A. ("Defendants") for breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), and promissory estoppel (Count III), alleging that Defendants wrongfully denied them a trial period plan (TPP) that would have given them an opportunity to qualify for a modified mortgage under the federal Home Affordable Modification Program ("HAMP"). Plaintiffs have moved for summary judgment on all counts [Paper No. 20], and Defendants have cross-moved for summary judgment on all counts [Paper No. 30].

For the following reasons, Plaintiffs' Motion for Summary Judgment is **DENIED**, and Defendants' Cross-Motion for Summary Judgment is **GRANTED**.

1

I.

Plaintiffs fell on hard times and were rendered unable to make the mortgage payments on their home in Silver Spring, Maryland.[1] On April 3, 2010, they contacted Defendant banks to request modification of their mortgage under HAMP, a federal initiative intended to avoid foreclosures by creating incentives for the modification of outstanding mortgage loans.

Plaintiffs allege that they received a letter dated July 9, 2010 from Defendants stating that, if they met the eligibility criteria, including submitting all of the required documentation, they would be offered a TPP, i.e. a three month or longer trial period in which borrowers make payments under modified payment terms. If Plaintiffs were offered a TPP, and if they complied with the TPP agreement and if their representations remained true and correct, they would be offered permanent modification of their mortgage.

Plaintiffs allege that during the thirteen months following the initial invitation letter, they sent in all the required documentation numerous times. They submit that their documentation was met by continuous letters from Defendants telling them that they would be considered for a TPP if they sent in the required documentation. Then, on November 29, 2010, say Plaintiffs, they were told for the first time that they were being denied modification because of their failure to send in required documentation. However, on December 28, 2010 and again on February 1, 2011, Plaintiffs were allegedly invited by Defendants to once again apply for a HAMP modification. Plaintiffs claim that the same cycle ensued as before, in which the Banks' repeated requests for documentation were met with prompt submissions of the requested documentation. But on April 20, 2011, Plaintiffs were told for a second time that they were being declared

---

[1] The record indicates that Plaintiffs have made no mortgage payments since September 2007, the total arrearage of principal, interest, fees and costs being approximately $224,500 as of April 1, 2013.

ineligible for a TPP because of a failure to send in the requested documentation. Despite receiving yet another invitation from Defendants to apply for HAMP, Plaintiffs suggest they had grown exasperated with their futile back-and-forth with Defendants and therefore filed suit against them in the Circuit Court for Montgomery County. The case was removed to this Court on the basis of federal question and diversity jurisdiction and is presently before the Court on dispositive motions.

## II.

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Summary judgment may be granted against a party who fails to make a showing sufficient to establish the elements essential to the party's claim and on which the party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

In considering a motion for summary judgment, the Court must "draw all justifiable inferences in favor of the nonmoving party." *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson*, 477 U.S. at 255). However, it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp.*, 477 U.S. at 323-24).

## III.

Plaintiffs ask for summary judgment on all three of their claims against Defendants: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) promissory estoppel. Defendants have filed a cross-motion for summary judgment on all these claims.

The Court finds that Plaintiffs have not demonstrated that they are entitled to judgment as a matter of law because the facts they allege establish no cognizable cause of action. Defendants' Cross-Motion for Summary Judgment will be granted for the same reason.

### A.

### Breach of Contract

"Under Maryland law, the formation of a contract requires mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration." *Spaulding v. Wells Fargo Bank, N.A.*, 714 F. 3d 769, 777 (4th Cir. 2013) (citations omitted). Insofar as Plaintiffs originally sought to claim that Defendants breached a contract to provide a permanent HAMP modification, Plaintiffs now agree that no private cause of action exists under HAMP. *See Bowers v. Bank of America, N.A.*, 905 F. Supp. 2d 697, 702 n.2 (D. Md. 2012) ("Congress did not create a private right of action to enforce the HAMP guidelines . . . .") (quoting *Wigod v. Wells Fargo Bank, N.A.*, 673, F.3d 547, 559 n.4 (7th Cir. 2012)). Accordingly, there can be no recovery for Defendants' purported failure to offer Plaintiffs a permanent HAMP modification. That leaves, at most, a claim for breach of a contract to provide a TPP or, short of that, a claim for breach of a contract to at least consider Plaintiffs for a TPP.

However, *Spaulding* brings the general proposition that an offer must be clear and definite down to the specifics of a request that a mortgage loan be modified:

> [B]oth the foreclosure notice and HAMP Starter Kit contain clear qualifying language that falls short of the definiteness required to make a contract. Under long-settled contract law, when some further act of the purported offeror is necessary, the purported offeree has no power to create contractual relations, and there is as yet no operative offer. The language in the foreclosure notice and Starter Kit (e.g., "we determine if you qualify") makes clear that further action was required on the part of Wells Fargo before an offer would be extended. When there is no offer, there can be no contract.

*Id.* at 778 (citation and quotations omitted). As in *Spaulding,* Plaintiffs here cannot show that they were given a clear and definite offer of any sort, because the language in Defendants' letters was clearly "qualifying" and because "further action was required on the part of [the Bank] before an offer would be accepted."

Considering the facts in a light most favorable to Plaintiffs, no contract of any sort with Defendants ever came into being. Accordingly, Defendants are entitled to summary judgment as to Count I.

**B.**

Breach of Covenant of Good Faith and Fair Dealing

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing falls from the case, because Maryland does not recognize this as an independent cause of action, a point which Plaintiffs concede. *See Sheard v. Bank of America, N.A.*, Case No. PJM-11-cv-3082, 2012 WL 3025119 (D. Md. July 23, 2012) (quoting *Mount Vernon Props. v. LLC Branch Banking & Trust Co.*, 907 A.2d 373 (Md. App. 2006)).

Defendants are entitled to summary judgment as to Count II.

C.

Promissory Estoppel

Under Maryland law, four elements must be satisfied to state a claim for promissory estoppel. There must be: (1) a clear and definite promise; (2) a reasonable expectation by the promisor that the promise will induce action or forbearance by the promisee; (3) actual and reasonable action or forbearance by the promisee that is induced by the promise; and (4) resulting detriment to the promisee that can only be avoided by enforcement of the promise. *Pavel Enterprises, Inc. v. A.S. Johnson Co.*, 674 A.2d 521, 532 (Md. 1996).

The Court considers these elements as they apply in the present case.

Because of the qualifying nature of Defendants' letter of July 9, 2010, that "[i]f you meet the eligibility criteria, including submitting all of the required documentation, we will offer you a Trial Period Plan" [Paper No. 2, Ex. 11], there can be no basis for finding that the first requirement for promissory estoppel, i.e. a clear and definite promise, was ever made.[2]

At most, and it is a considerable stretch, a promise might be inferable that Defendants would at least *consider* Plaintiffs for a TPP. *See, e.g., Currie v. Wells Fargo Bank, N.A.*, 2013 WL 2295695, at *15 (D. Md. May 23, 2013) (finding cognizable promissory estoppel claim where bank allegedly promised to evaluate loan modification application but then failed to do

---

[2] It is significant that the Plaintiffs never entered into a TPP. Courts in this district and elsewhere have been more likely to find that a cause of action lies when a plaintiff is already in a TPP, because the plan agreement can arguably be construed as a binding contract and because payments in reliance on the plan can serve as damages in promissory estoppel and consumer protection based actions. *See, e.g., Allen v. CitiMortgage, Inc.*, No. CCB-10-2740, 2011 WL 3425665 (D. Md. Aug. 4, 2011)(finding colorable breach of contract claim because of TPP agreement); *In Re Bank of America Home Affordable Modification Program Contract Litigation*, MDL No. 2193-RWZ (D. Mass. consolidated Jan. 21, 2011) (dismissing claims of non-TPP plaintiffs, but allowing claims of TPP plaintiffs, who alleged promissory estoppel, breach of contract, and violation of state consumer protection acts).

so). And it will be assumed for present purposes that Defendants should have reasonably expected that, based on Defendants' holding out of the prospect of a TPP, Plaintiffs would make application for the TPP, and would do so on the assumption that, by submitting requested documents, they would at least be considered for eligibility for the TPP.[3] But the problem is that Plaintiffs have not alleged a cognizable detriment that "can only be avoided by enforcement of the promise" to consider Plaintiffs' eligibility for a TPP (which, of course, Defendants could always decline to give).

What is undisputed is that Plaintiffs have not made a single loan payment since September 2007, i.e. for some six years, beginning well prior to their initial HAMP application [Paper No. 30-1 at 1]. In other words, Plaintiffs have not incurred any economic damages as a result of the supposed failure of Defendants to consider them for a TPP [Paper No. 30, Ex. D at ¶ 9]. Moreover, since no foreclosure action is currently pending against their home [Paper No. 30-1 at 16], they have essentially been able to remain in their home without having to pay anything at all, though, to be sure, their mortgage principal, interest, and costs have been accruing. Plaintiffs also concede that they "never stated that their application for loan modification caused them to lose opportunities to fund other strategies to deal with their default" [Paper No. 30, Ex. D at ¶ 19].[4] And, when given numerous opportunities to allege damages, Plaintiffs have consistently failed to do so.

---

[3] To be sure, there is a genuine dispute of fact—though not material enough to avoid summary judgment—as to whether Plaintiffs in fact submitted appropriate documentation to Defendants in timely fashion, albeit Defendants continue to insist that they did not.

[4] In the very few cases where non-TPP plaintiffs have been found to have a potential cause of action, there has been a significant detriment suffered by them in reliance on the banks' promises to consider modification of their mortgage. *See Currie*, --F. Supp. 2d--, 2013 WL 2295695 (plaintiffs accrued fees and misallocated mortgage payments as result of bank's failure to evaluate modification requests); *In Re JPMorgan Chase Mortgage Modification Litigation*,

7

Plaintiffs may well have been distressed by what seems to have been neglect and perhaps even sloppiness on the part of Defendants. But emotional distress alone cannot establish the "detriment" element of promissory estoppel. *See generally,* Restatement of Contracts (2d), § 349 (reliance damages).

And in a larger sense it is ultimately impossible to allow that any detriment to Plaintiffs could be deemed the result of *reasonable* reliance, as required for promissory estoppel. At most, Plaintiffs were given a promise that their application for a TPP would be considered, not that a TPP would be granted and not that their mortgage would be permanently modified. They always faced the hurdle of meeting the eligibility requirements for a TPP, an outcome which would be wholly speculative. *See Green v. Wells Fargo Bank, N.A.,* --F. Supp. 2d--, 2013 WL 766196, at *9 (D. Md. Feb. 27, 2013) (forbearance resulting from alleged promise to process loan modification request was unreasonable).

Defendants are entitled to summary judgment as to Count III.

### IV.

A final word:

This case illustrates the perils of *pro se* plaintiffs attempting to navigate murky legal waters. Plaintiffs may well have lived through the mishandling of their request for relief under HAMP at the hands of Defendants. The problem is that Plaintiffs have alleged conventional causes of action that simply do not cover the grievances they assert.

But there may yet be avenues that homeowners in Plaintiffs' situation (if not Plaintiffs themselves) can pursue now or in future that would lead to a better resolution than Plaintiffs

---

MDL No. 2290-RGS (D. Mass. consolidated Jan. 20, 2012)(plaintiffs defaulted on loan payments because bank told them that was the only way to become eligible for modification).

found here, especially with respect to their claim that the banks in effect never gave them a fair chance to be considered for a TPP. One of these avenues is through the Consumer Financial Protection Bureau (www.consumerfinance.gov), which has adopted new rules, to take effect in January 2014, that would provide significant protections for homeowners facing foreclosure. *See* http://www.consumerfinance.gov/pressreleases/consumer-financial-protection-bureau-rules-establish-strong-protections-for-homeowners-facing-foreclosure/ .

Additionally, there may be other state or federal statutory remedies that get closer to the alleged problem, e.g., the Maryland Consumer Protection Act, Md. Code. Ann. Comm. Law § 13-301(1), § 13-303(4)-(5) (West 2012); *see Marchese v. JP Morgan Chase Bank, N.A.,* U.S. D.C. Md. Civ. Action No. GLR 12-1480, Memorandum Opinion Filed 1/8/13 on the Equal Credit Opportunity Act, 15 U.S.C. § 1691 (a)(1); *see Piotrwaski v. Wells Fargo Bank, N.A.,* U.S. D.C. Md. Civ. Action No. DKC 11-3758, Memorandum Opinion Filed 1/22/13.

These observations are not meant to say that Plaintiffs in this (or indeed in any case) necessarily have right on their side. They are meant only to point out that there are better channels through which disputes of the sort raised here can be presented and decided.

Courts, as has been stated many times, owe some solicitude to *pro se* litigants and, especially in newly emerging areas of the law involving mortgage modifications, some guidance on how complaints might properly be framed.

That said, the Court concludes that Plaintiffs have had their day in court on the record presently before it and the Court is not inclined to extend this case any further. Any cause of action predicated on the facts in this matter will be dismissed with prejudice.

On the other hand, should Plaintiffs initiate new discussions with Defendants (or other prospective lenders) about possible permanent modification of their home mortgages and should

problems similar to those of the present case recur, there may be alternate venues or theories through which to seek resolution.

V.

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment [Paper No. 20] is **DENIED**, and Defendants' Cross-Motion for Summary Judgment [Paper No. 30] is **GRANTED**.

A separate Order will **ISSUE**.

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

August 9, 2013